IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

MARK BAILEY,

          Plaintiff,

    vs.                    **Case No. 06-4114-RDR**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

―――――――――――――――――

**MEMORANDUM AND ORDER**

Plaintiff has filed an application for social security disability benefits alleging May 22, 2001 as the onset date of disability. An administrative hearing was conducted by an Administrative Law Judge (ALJ) on February 15, 2006. The ALJ issued a decision rejecting plaintiff's application for benefits on June 30, 2006. Defendant has adopted the decision to deny benefits. This case is now before the court to review defendant's decision.

STANDARD OF REVIEW

The court reviews defendant's decision to determine whether the decision was supported by substantial evidence and whether the correct legal standards were applied. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is such evidence that a reasonable mind might accept to support the conclusion. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004) (quoting

Richardson v. Perales, 402 U.S. 389, 401 (1971)).  The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision.  Glenn, 21 F.3d at 984.

ALJ DECISION

The ALJ's decision set forth the five-step evaluation process followed in these cases:

> (1) Is the claimant engaging in substantial gainful activity; (2) Does the claimant have severe impairments; (3) Does the impairment or combination of impairments meet or equal an impairment listed in Appendix 1; (4) Does the impairment or combination of impairments prevent the claimant from doing past relevant work; (5) Does the impairment or combination of impairments prevent the claimant from doing other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(a) (4)(i)-(v)(2005).

(Tr. 16).

The ALJ found that plaintiff was not engaging in substantial gainful activity.  She further found that the medical evidence established that plaintiff has the following severe impairments: chronic pain disorder; cervical spondylosis; degenerative joint disease of the right shoulder and both knees; alcohol abuse, in partial remission; ongoing marijuana use; mood disorder; and personality disorder.  She determined that the criteria of any disabling impairment listed in Appendix 1, Subpart P, Regulation No. 4 were not established in the record.  She concluded that plaintiff can perform sedentary work only, including the ability to

2

lift and carry up to 10 pounds, stand and/or walk for 2 hours in an 8-hour day and sit for six hours in an 8-hour day. She also found, regarding mental limitations, that plaintiff is moderately limited in interacting with groups, with "moderately" meaning having some difficulty, but still able to function successfully. The ALJ determined that plaintiff was disabled from performing his past relevant work. Plaintiff worked for several years as a tree trimmer. He has also worked as a laborer in a tire shop. At step five of her analysis, the ALJ concluded that plaintiff could perform such jobs as a surveillance systems monitor, semi-conductor assembler and administrative support worker. (Tr. 23-24).

Plaintiff was born in 1958. He has a high school education. Other aspects of the ALJ's decision will be set forth later in this decision.

PLAINTIFF'S ARGUMENTS

Mental impairments

Plaintiff first argues that the ALJ misanalyzed the nature and extent of plaintiff's mental impairments.

The ALJ's decision makes the following comments regarding plaintiff's mental impairments:

> The psychiatric evaluation took place at the VAMC [Veterans Administration Medical Center] on September 26, 2002. The medical notes reflect that claimant had no previous history of psychiatric treatment. A long history of alcohol and drug abuse (cocaine and marijuana) was reported along with sobriety for the previous two years. The psychiatrist provided the following assessment: pain disorder; mood disorder due to chronic

3

pain; rule out undifferentiated somatoform disorder; rule out malingering ("patient looking for VA benefits and disability as secondary gain"); and a GAF score of 60. (Tr. 17).

A consultative mental status examination was conducted by Dr. Stanley Mintz, Ph.D. on September 4, 2003. Dr. Mintz gave a diagnostic impression of generalized anxiety disorder, consider paranoia, and provided a current GAF score of 60 and the highest GAF in the past year of 65.

The claimant began treatment for major depressive disorder at The Guidance Center in March 2004. Based on the medical records provided, he stopped that treatment on September 14, 2004.

The claimant resumed treatment at the VAMC on March 25, 2005, about a year and a half after his last treatment there. On May 13, 2005, the following diagnostic impressions are listed: pain disorder associated with psychological factors; somatoform pain disorder; myofascial pain syndrome; irritable bowel syndrome, personality disorder NOS; hard of hearing; presbyopia; GERD; Barrett's Esophagus; anxiety disorder; alcohol abuse - currently in remission; tobacco use disorder; substance abuse (marijuana). (Tr. 19).

Dr. Santos completed a Mental Impairment Questionnaire form on February 23, 2006, indicating that the claimant had a mood disorder and personality disorder that cause mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild to moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. Dr. Santos indicated that the claimant did not take his medications as prescribed and thus was not compliant with treatment. The undersigned gives great weight to the opinions by Dr. Santos, the claimant's treating psychiatrist, as they are supported by substantial evidence of record. (Tr. 20).

[C]onsidering all mental impairments, including drug abuse, the medical evidence does not establish the degree of severity or frequency of mental functional limitations necessary to satisfy the subparagraph "B" criteria of Listing 12.04, 12.08 and 12.09. Specifically, the undersigned finds that the claimant had mild restriction of activities of daily living, moderate difficulties in

maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. The undersigned also notes that the claimant satisfies no "C" criteria, as described in Listing 12.04. Accordingly, based on the overall record, the undersigned finds that the claimant does not have an impairment or combination of impairments that meets or equals in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P to Regulation No. 4. (Tr. 20).

The claimant had been diagnosed with depressive disorder and personality disorder but has received little mental health treatment for his symptoms. Dr. Santos reported that he had only seen the claimant for about six months. Moreover, Dr. Santos indicated that the claimant had good ability in all areas listed in the Mental Impairment Questionnaire, except for the areas of carrying out detailed instructions, setting realistic goals or making plans independently of others and dealing with stress of semiskilled and skilled work, which were considered "fair," meaning the ability to function is seriously limited, but not precluded. Dr. Santos also provided the claimant with a Global Assessment of Functioning of 45 to 50, which is inconsistent with his progress notes and the specific limitations he assessed. Thus, this GAF is given little weight. Further, the State agency psychologist indicated that the claimant's symptoms were mild in severity. In addition, the claimant has never been hospitalized for psychiatric reasons. Overall, the claimant's mental limitations appear to be mild to moderate in nature without treatment and would likely improve with regular and consistent mental health treatment. (Tr. 21).

Plaintiff asserts that there is evidence in the record which indicates that plaintiff suffers from anxiety disorder and somatoform disorder. Indeed, some of this evidence is acknowledged in the above-stated excerpts from the ALJ's decision. Plaintiff contends that this evidence was sufficient to demonstrate that these disorders significantly limited plaintiff's ability to do basic work activities and, therefore, should be considered "severe"

impairments either by themselves or in combination with other impairments.  Plaintiff asserts that the ALJ failed to follow steps two and three of the five-step sequential evaluation process for social security claims, when she failed to determine whether plaintiff's anxiety disorder or somatoform disorder were severe mental impairments and whether they met or equaled a listed impairment in the regulations.

We reject this argument.  The ALJ considered various physical and mental impairments, including evidence of anxiety disorder and somatoform disorder.  At step two of the evaluation process, the ALJ found several severe impairments, some physical and some mental.  This means that the ALJ had to proceed to consider whether plaintiff established that he satisfied the criteria described in the Listing of Impairments.  While the ALJ may not have considered the Listings for anxiety disorder and somatoform disorder, plaintiff does not contend that his condition meets the requirements of those listings.  See Listings at 12.06 and 12.07, 20 C.F.R. Part 404, Subpart P, Appendix 1.  Therefore, this does not appear to be a meaningful error.  The ALJ found that plaintiff could not return to his previous employment.  Accordingly, the ALJ decided this case at step five.  At this step it appears to the court that the ALJ considered all severe and non-severe impairments.  She stated that she gave great weight to the opinion of Dr. Santos.  Dr. Santos considered the evidence of anxiety

disorder and somatoform disorder. (E.g., Tr. 296, 309).

Therefore, we do not find an error at the step two or step three

stage of the evaluation process. See Ottman v. Barnhart, 306

F.Supp.2d 829, 839 (N.D.Ind. 2004) (no error in ALJ failing to

determine whether anxiety and pain disorders were "severe" at step

two if evidence of disorders was considered in reaching conclusion

at step five).

Plaintiff also argues that the decision to deny benefits

should be overturned because, while Dr. Santos found a "mild to

moderate" limitation in plaintiff's abilities of concentration,

persistence or pace, the ALJ found only a "mild" limitation in

those abilities, despite giving "great weight" to Dr. Santos'

opinion. Plaintiff does not argue that this discrepancy is

meaningful; rather plaintiff argues that remand is necessary for

the ALJ to explain whether or not the discrepancy is meaningful.

We disagree that this requires remand. The ALJ's findings with

regard to concentration, persistence or pace did not impact whether

plaintiff's mental impairments were considered severe. Further,

the findings are supported by a consulting psychologist's review.

(Tr. 232). It should also be noted that Dr. Santos found that

plaintiff had a "good" ability to understand and remember detailed

instructions, and a "fair" ability to carry out such instructions,

set realistic goals and make plans independently of others, and

deal with the stress of semiskilled and skilled work. (Tr. 312).

We find no grounds for remand in order to reexamine the line drawn between mild or moderate limitations in plaintiff's concentration, persistence and pace.

Plaintiff further asserts that the ALJ made improper judgments in determining plaintiff's residual functional capacity (RFC) because the ALJ considered the absence of psychiatric hospitalization and consistent mental health treatment. We believe this is proper evidence for an ALJ to consider in the context of the complete record. Plaintiff recounts the numerous medical notations which substantiate problems with paranoia, depression, anxiety, odd affect, poor sleep, poor concentration, vague speech and other difficulties. The court does not believe this evidence was ignored by the ALJ or by the experts upon whom the ALJ relied to make a decision. We note, for example, that Dr. Santos, a treating psychiatrist in this case, found that plaintiff had a "good" ability to: interact appropriately with the general public; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; travel in an unfamiliar place; and use public transportation.

In sum, we believe substantial medical evidence supports the ALJ's decision regarding plaintiff's RFC and that the ALJ properly analyzed the evidence of plaintiff's mental impairments.

<u>Credibility</u>

Plaintiff makes several arguments to support a claim that the

ALJ improperly analyzed the credibility of plaintiff's complaints of pain and disability.  The ALJ stated that she evaluated plaintiff's subjective complaints and the testimony of plaintiff's wife and found that they were not fully credible to the "extent that they are inconsistent with the medical evidence and the findings regarding functional limitations." (Tr. 23).

Plaintiff begins his credibility argument by listing the various factors that case law states should be considered in determining credibility, such as:  persistent attempts to find relief for pain; willingness to try prescribed treatment; regular contact with a physician; possible existence of psychological disorders combining with physical problems; daily activities; medication regimen; and motivation of plaintiff and other witnesses.  Doc. 9, pp. 39-40, citing Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987) and Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  The ALJ did consider these factors in her decision. She recounted the following:  plaintiff's efforts to seek medical attention; plaintiff's history of seeking and taking medication; his daily activities; the relation or lack of relation between physical findings and plaintiff's complaints of pain; the diagnosis of pain disorders and psychological conditions; and assessments of plaintiff's motivation in his various medical visits.  Thus, we believe the ALJ reviewed and discussed evidence relevant to making credibility determinations.  Of course, courts are obliged in

general to defer to the credibility decisions of an ALJ.    See Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).

Plaintiff makes several specific objections to the ALJ's credibility analysis that are not tied directly to the general list of factors an ALJ should consider.    Plaintiff contends that the ALJ erred by not specifically discussing plaintiff's testimony in the administrative hearing.    The only specific reference to plaintiff's testimony was that plaintiff could not remember why he listed May 22, 2001 as the onset date of disability.    (Tr. 16).    We do not believe this is grounds to reject the ALJ's credibility analysis. The ALJ's decision relates the following points which seem relevant to the ALJ's credibility determination.

> Plaintiff alleged an onset date of disability of May 22, 2001, but his medical records begin on September 9, 2002. (Tr. 16).

> Plaintiff allegedly suffered numerous injuries as a tree trimmer, but there is no evidence that he sought medical care for those injuries.    (Tr. 16).

> Various physical examinations found little objective evidence to support plaintiff's complaints of pain.    No evidence of inflammatory arthritis or rheumatism.    Hips and knees in good condition.    Normal gait.    Normal grip. Mild degenerative changes.    Normal muscle strength and deep tendon reflexes in all extremities with no edema. Normal range of motion.    (Tr. 16-22).

> Persons examining plaintiff made comments reflecting negatively upon defendant's motivation.    For example: "patient looking for VA benefits and disability as secondary gain" (Tr. 17); plaintiff "obsessed about me documenting that his injuries are job related" (Tr. 17); plaintiff "only interested in what documentation will support his service claim.    States that he does not believe doctors can help him except for further

documentation . . . The claimant expressed his goal was to get disability and stop hurting" (Tr. 18); plaintiff was "a poor historian" (Tr. 18); plaintiff gave very poor effort and displayed embellishment of symptoms during examination (Tr. 18); plaintiff "is so hooked on the idea that the VA should compensate him for what happened to him while in the military that seems to be the whole idea" (Tr. 19-20).

Plaintiff's history with alcohol and pain medication: "The claimant reported that he had stopped taking his medications for the last few days because they were not working and was drinking alcohol on and off" (Tr. 17); plaintiff "reported that he had stopped taking all his medications three weeks prior because they were not working" (Tr. 17); "claimant advised that he wished to stop the physical therapy prescribed for him and wanted stronger pain medications" (Tr. 17); "[s]ince the claimant was unsuccessful in getting the VAMC to prescribe stronger pain medications, it appears he went to Dr. Rider for the drugs" (Tr. 18); "claimant is elusive about alcohol usage" during a consultative examination (Tr. 18); plaintiff told he "is expected to work with VA providers to accomplish pain control and . . . this will involve more than taking 'a' pain pill" – plaintiff states in response that "he gave up alcohol use so he could get pain medications from his private non-VA physician . . . and if we do not give him those medications he will resume alcohol use.  His behavior alters at this point and he clearly states he is doing this because he cannot afford to buy alcohol in the amounts he wants to use" (Tr. 19); "While the claimant's wife testified at the hearing that she mistakenly [answered on a form] that the claimant lost his job due to drinking, the undersigned does not find this credible" (Tr. 21).

Plaintiff's lack of treatment:  "The medical evidence does not support claimant's allegations of pain and limitation.  Other than receiving pain medication, the record shows that he has had very little treatment for his conditions." (Tr. 21).

Plaintiff's activities of daily living: Plaintiff filled out a form indicating that he spends 25 hours per week away from his home picking up trash around the neighborhood and talking with neighbors.  It also indicated that he occasionally fishes and hunts and that

he does some mowing with a push mower.   The ALJ found
this tended to support the conclusion that plaintiff
could perform sedentary labor.  (Tr. 22).

In sum, while the ALJ did not address more than one specific
statement in plaintiff's testimony, she thoroughly set forth her
reasons to question the credibility of that testimony and clearly
did not ignore plaintiff's subjective complaints of pain.
Moreover, there is no claim that the ALJ misunderstood or
misconstrued plaintiff's position with regard to this case.
Indeed, the ALJ asked plaintiff's representative to submit a post-
hearing letter which further explained plaintiff's position in this
matter.  Therefore, we reject plaintiff's claim that the ALJ did
not sufficiently discuss plaintiff's testimony.

Plaintiff asserts that the ALJ unfairly minimized plaintiff's
work history as demonstrating only "some" motivation to work.  (Tr.
21).  Plaintiff worked for many years as a tree trimmer.  He also
worked as a laborer in a tire shop. Plaintiff contends that his
work history is quite positive.  This is a question of degree in
the court's estimation and not a question of the ALJ failing to
follow the law or failing to support her decision with substantial
evidence.  Therefore, we reject plaintiff's argument regarding the
assessment of his work history.

Plaintiff next asserts that the ALJ failed to cite specific
evidence which contradicts plaintiff's complaints.  We believe the
previous recitation from the ALJ's decision shows that the ALJ did

12

cite to specific evidence which contradicted (sometimes indirectly) plaintiff's complaints.

Plaintiff also objects to the ALJ's conclusion that plaintiff had very little treatment for his conditions aside from his pain medications, as well as to her consideration of that factor. Plaintiff contends that the ALJ's finding lacks specificity and that there was no showing that additional treatment had been prescribed or would improve plaintiff's health problems.   We believe there is sufficient support for the ALJ's consideration of this matter.   Whether additional treatment was prescribed or would improve plaintiff's health is a matter of argument which plaintiff was free to make in this case.   Plaintiff also asserts that the ALJ actually ignored the pain medication which plaintiff was prescribed.   We do not believe the record supports this assertion. The ALJ was free to make a conclusion regarding credibility in light of plaintiff's treatment, prescribed medicines, and adherence to treatment regimens, as well as the arguments made by plaintiff in that vein.   We find no error in the ALJ's reasoning process in this regard.

In this connection, plaintiff accuses the ALJ of ignoring the treatment plaintiff sought from non-VA sources.   We disagree.   This treatment is recognized in the ALJ's decision.   The opinion indicates that plaintiff sought treatment for depression for approximately six months in 2004 from The Guidance Center.   (Tr.

19).  The opinion also makes reference to plaintiff's treatment from Dr. Rider and suggests that plaintiff went to Dr. Rider because he was unsuccessful at getting the VAMC to prescribe stronger pain medication.  (Tr. 18).

Plaintiff asserts that the ALJ failed to recognize VA records which show plaintiff's inability to afford transportation to the facility.  The records, as we view them, may indicate financial pressure and a concern about the cost of medication.  The records do not, as counsel asserts, "clearly and distinctly" show an inability to afford transportation to the facility, in the court's opinion.  Nor do we believe any flaw in the ALJ's consideration of plaintiff's financial circumstances would be fatal to his credibility analysis.  For these reasons, we reject this criticism of the ALJ's decision.

Plaintiff attacks the ALJ's consideration of plaintiff's activities of daily living form.  Plaintiff asserts that the ALJ only considered the information on the form which was negative to plaintiff's claim and that the ALJ failed to address contradictory testimony or information in the record.  It is accurate to state that in her decision the ALJ focused on the answers on the form which were negative to plaintiff's claim without accounting for the answers or the testimony which supported plaintiff's claim.  Nevertheless, we do not believe this is grounds for reversing the ALJ's decision.  An ALJ is not required to discuss every bit of

14

evidence in the record.  Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).  "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  Id.  The court does not believe all the entries on the activities of daily living form fall in the category of uncontroverted evidence or significantly probative evidence.  To some extent the form contradicts itself and, in the context of the entire record, the form does not appear to be significantly probative.

Finally, but importantly, plaintiff makes arguments to the effect that the ALJ's credibility analysis does not account for the psychological component of plaintiff's pain.  This, plaintiff notes, may explain:  the absence of objective medical findings; the observations that plaintiff embellished his symptoms; the infrequency of treatment other than pain medication; and the fact that plaintiff did not always take prescribed medication because he did not think it worked.  While a case can be made that plaintiff suffers from a somatoform disorder or some other psychological impairment which causes plaintiff to experience pain, substantial evidence from plaintiff's treating psychiatrists and other mental health professionals supports the factual and legal conclusions contained in the ALJ's decision.  These professionals have considered plaintiff's psychological condition and pain disorders.

They have rendered opinions regarding the impact of plaintiff's physical and mental impairments upon his ability to work. Except for Dr. James Rider, their opinions provide basic support for the conclusion of the ALJ in this case.

Treating physicians

Plaintiff's next argument is that the ALJ improperly considered the opinions of two treating physicians, Dr. Rider and Dr. Santos. Plaintiff recites the Tenth Circuit's discussion of the standards for evaluating the opinions of treating physicians which is contained in Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003). In Watkins, the court stated that "an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating physician's opinion." 350 F.3d at 1300, quoting, 20 C.F.R. § 404.1527(d)(2). An ALJ should consider whether the opinion is supported by medically accepted diagnostic techniques and whether it is consistent with other substantial evidence in the record. Id. If it is deficient in either respect, then the opinion is not entitled to controlling weight. Id. If the opinion is not entitled to controlling weight, it may still be entitled to deference depending upon various factors such as the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, support by or consistency with relevant evidence and whether the physician is a specialist in the area in question. Id. at 1300-01.

16

Plaintiff first objects to the ALJ's consideration of Dr. James Rider's opinion.  Dr. Rider completed a form regarding his opinion of plaintiff's physical ability to do work-related activities.  (Tr. 251).  The form states that plaintiff could not lift and carry more than 10 pounds on an occasional basis, cannot stand and walk for more than 2 hours during an 8-hour day, cannot sit more than 2 hours, cannot sit or stand for more than 20 minutes without changing position, cannot twist, stoop, crouch or climb ladders, needs to lie down 2 or 3 times a day for 2 hours at a time, and would need to be absent from work more than three times a month.

The ALJ dismissed this opinion, stating:

> The undersigned gives little weight to the limitations expressed by Dr. Rider . . . because they are not supported by the overall record or his own treatment notes.  His treatment notes are sparse and show no real problems with range of motion, strength or sensation. They reflect that the claimant's extremities are stable other than some tenderness.  The doctor's limitations appear to be based on the claimant's subjective complaints rather than any true objective testing.

(Tr. 18).

Plaintiff objects that the treatment notes do support Dr. Rider's opinion because they show "mild" or "minor" swelling in his fingers, hands and wrists, as well as right shoulder pain and tenderness on the right side of the neck.  (Tr. 218-19, 257).  This may be true, but we do not believe it substantially discredits the ALJ's evaluation of Dr. Rider's treatment notes vis-a-vis Dr.

17

Rider's opinion of plaintiff's physical abilities.  Plaintiff also notes that the diagnosis of fibromyalgia would not result in abnormal findings on examination.  However, Dr. Rider did not diagnose fibromyalgia.

Plaintiff also argues that the ALJ is merely speculating that Dr. Rider's limitations appear to be based on plaintiff's subjective complaints rather than any true objective testing.  This speculation is apparently based on Dr. Rider's note that he and plaintiff "talked about filling out his form for disability and got all the questions filled out and will be mailing it back to his attorney." (Tr. 258).  We do not believe this speculation, while perhaps improper (see Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004); McGoffin v. Barnhart, 288 F.3d 1248, 1252-53 (10th Cir. 2002)), is so damaging that it invalidates the ALJ's evaluation of Dr. Rider's opinion.

Plaintiff next attacks the ALJ's evaluation of Dr. Fermin Santos' opinion.  Plaintiff complains that it is inconsistent for the ALJ to state that she gave Dr. Santos' opinions "great weight" (Tr. 20), but also state that she gave Dr. Santos' GAF score for plaintiff "little weight." (Tr. 21).  Plaintiff appears to concede that a conflict exists between Dr. Santos' GAF score and other findings Dr. Santos made as part of a Mental Impairment

Questionnaire.[1]

Plaintiff contends that it would be proper to remand the case for the ALJ to resolve the discrepancy, rather than allow the ALJ to "pick and choose" those findings that support her decision and reject the findings that don't support her decision.

The court does not find that the ALJ's treatment of Dr. Santos' opinion merits a remand of this matter for further consideration. Plaintiff has been seen by various mental health professionals who have listed GAF scores from 45 to 65. Dr. Santos listed a score of 45 - 50 which indicates a serious impairment. Thus, although the ALJ gave that evaluation "little weight", it is consistent with the finding of the ALJ that plaintiff had severe mental and physical impairments for the purposes of the social security regulations. It is also consistent with Dr. Santos' opinion that plaintiff had only "fair" ability in the area of carrying out detailed instructions, setting realistic goals or making plans independently of others and dealing with the stress of work. The ALJ construed this rating to mean that plaintiff's

---

[1] As defendant explains in its brief, the Global Assessment of Functioning (GAF) Scale represents a subjective judgment of a person's psychological, social and occupational functioning. A score of 41-50 indicates serious symptoms or a serious impairment in social, occupational or school functioning. A GAF score of 51-60 indicates moderate symptoms. A GAF score of 61-70 indicates some mild symptoms. Dr. Santos' assessment of plaintiff's mental abilities as detailed at Tr. 312-13 and summarized previously in this opinion does not indicate serious symptoms or a serious impairment. Doc. No. 12, p. 18-19 n.7.

ability to function was "seriously limited, but not precluded."
(Tr. 21).  The score arguably may not be consistent with other
ratings Dr. Santos gave which indicated only mild or moderate
limitations, but as the ALJ concluded, these ratings may be more
consistent with Dr. Santos' progress notes.  The score, by itself,
is not a definitive test of disability.  Querido v. Barnhart, 344
F.Supp.2d 236-246 (D.Mass. 2004) (citing, Seymore v. Apfel, 131
F.3d 152, 1997 WL 755386 (10th Cir., unpublished, 1997)).  While an
ALJ cannot pick and choose in a manner which ignores contradictory
evidence, and while an ALJ must make a reasoned resolution when
faced with conflicting evidence, the decision to accord "little
weight" to the GAF score of Dr. Santos does not violate either of
these responsibilities.  The score itself is not so probative under
these circumstances that the ALJ's dismissal of the score
represents an unreasoned negation of contradictory evidence.  Nor
is the score so much in conflict with Dr. Santos' other opinions
that it demands further explanation to resolve the discrepancy.

        The Hypothetical Question

        Finally, plaintiff asserts that the ALJ's assessment of
plaintiff's mental and physical impairments was so deficient and
lacking in precision that her questions to the vocational expert
could not elicit substantial evidence in support of the ALJ's
decision.  This argument is based on plaintiff's previous arguments
which this court has described and rejected in this opinion.

CONCLUSION

For the above-stated reasons, the court affirms defendant's decision to deny plaintiff's application for disability income benefits.

**IT IS SO ORDERED.**

Dated this 13th day of June, 2007 at Topeka, Kansas.


                              s/Richard D. Rogers
                              United States District Judge